## KAMINER v. HOPE.

1. It not appearing that the question presented by this appeal was ever brought to the attention of the Circuit Court, the well settled rule forbids its consideration by this court; but, under the circumstances of this case, the rule was relaxed and the point adjudicated.*

2. A decree against an administrator of an administrator at the suit of an administratrix *pendente lite* of the first intestate for an accounting, is sufficient to sustain an action against the sureties on such defendant's administration bond.

3. While the authority and power of an administrator *pendente lite* is much more limited in its nature than that of a general administrator, yet he may bring actions to recover debts due his intestate's estate. Cases reviewed.

---

Before COTHRAN, J., Lexington, September, 1881.

The case is fully stated in the Circuit decree, which was as follows:

This cause came on for trial before the court and a jury, at the fall term, 1881, of the court of Lexington county. By

---

* This rule was here relaxed, as stated in the syllabus, and in the case of *Sawyer, Wallace & Co.* v. *Macaulay, ante p.* 543, exceptions having no proper foundation in the Case submitted to this court, were considered *ex gratia.* But in both cases, the result reached was the same as if the technical rule had been applied. It is not probable that such exceptions would be considered, the appellee objecting, if they led the court to a reversal of the judgment below.

The principal case shows the necessity of having it to appear in the brief that points made on circuit and not alluded to in the decree of the Circuit judge, were so made. Where this is not shown by exceptions to a master's or referee's report, it can be accomplished by a simple statement to that effect.—REPORTER.

agreement of parties, the question as to the amount of the penalty of the bond signed by defendant's intestate, John C. Hope, as surety of Lévi Gunter, the administrator of Martin T. Leaphart, was alone submitted to the jury, upon which they were required to find a special verdict, all other questions being reserved for the judgment of the court. The jury having found that the penalty of the administration bond signed by defendant's intestate was $20,000, it devolved upon me to ascertain and fix the liability of the defendant's intestate as the surety of Levi Gunter.

The facts of the case, in so far as they are necessary for the proper understanding of this question, are as follows: Simon A. Leaphart, late of the county of Lexington, departed this life intestate some time during the year 1853, leaving as his only heir-at-law his widow, Mary Leaphart, and an only child, Polly Leaphart. Shortly thereafter his brother, Martin T. Leaphart, administered upon his estate, and reduced the same into his possession, reporting, on January 1st, 1854, a balance in hand of $4,894.50.

On April 24th, 1855, Mary Leaphart and Polly filed their bill in the Court of Equity for said county, against said Martin T. Leaphart, as administrator of Simon, praying an account of the estate of his intestate. The rights of the said Mary and Polly to claim, as heirs of Simon, were contested upon the ground of the illegality of the marriage of Mary with Simon, and the consequent illegitimacy of Polly.

Martin T. Leaphart died in the month of May, 1860, never having accounted; and thereafter Levi Gunter administered upon his estate, giving bond to the ordinary of Lexington county for the faithful discharge of his duty, with John C. Hope, defendant's intestate, as surety on said bond. Prior to his death, to wit, on April 9th, 1860, Martin made a deed of assignment to Gunter for the payment of his debts, under which Gunter sold the property of the said Martin, amounting to $15,164.57, out of which he paid Martin's debts, as directed in the assignment. Martin died before the sale. Gunter administered upon his estate, and sold the balance of his personal estate for about $150, and in his account with the ordinary,

as administrator, in January, 1861, showed a balance in hand of $11,125.

On March 28th, following, the said complainants filed their bill of revivor against Levi Gunter, as administrator of Martin T., with whom were joined, as defendants, George J. Leaphart, James E. Drafts and Sarah, his wife—the other heirs-at-law and next of kin of the said Martin T. By the several answers to this bill of revivor, like issues as to the legality of the marriage of Mary with Simon and the legitimacy of Polly, were raised, which had to be settled before an accounting could be had.

These questions being decided favorably to the complainants, (*Leaphart* v. *Leaphart,* 1 *S. C.* 199,) the other issues, both of law and fact, were, on January 5th, 1871, referred to Francis W. Fickling, Esq., who, on March 1st, 1871, reported in favor of the plaintiff Mary the sum of $4,047.68, and in favor of the plaintiff Polly the sum of $8,095.37, against the said Levi Gunter, being the amount due the estate of Simon by Gunter's intestate, Martin T., and in favor of the plaintiff Polly the further sum of $2,048.60, as one of the distributees of the said Martin T.

This report having been confirmed by the court, judgment was thereupon, on October 30th, 1873, entered up in favor of said complainants against the said Levi Gunter, and his entire estate advertised and sold by the sheriff of Lexington county. After applying the proceeds of such sale to the satisfaction of the judgment, there remained still due and unpaid by the said Levi Gunter the sum of $15,490.48. Mary Leaphart died intestate some time during the year 1872, and thereafter, to wit, on September 2d, 1872, Thomas L. Kaminer, one of the plaintiffs herein, administered upon her estate.

Upon the judgment of the court thus rendered against the said Levi Gunter, this action was instituted against the said John C. Hope (who was then living), one of the sureties upon Gunter's administration bond, for the balance due on said judgment. The cause was brought to a trial before the Honorable Thompson H. Cooke, one of the judges of this court, and a jury, at Lexington, in July, 1876, and upon a full submission of the cause to the jury the following verdict was rendered : " We find

that the penalty of the bond executed by Levi Gunter, as administrator of Martin T. Leaphart, with John C. Hope, the defendant herein, as surety, was for the sum of $20,000. We find that the amount now due by Levi Gunter, as administrator of Martin T. Leaphart, to the plaintiff by reason of his *devastavit* of the estate of said Martin T. Leaphart, and for which John C. Hope is liable in this action, is the sum of $15,498.48, with interest thereon from October 5th, 1874." A motion was thereupon made for a new trial, which having been refused, an appeal was prosecuted to the Supreme Court, the order of the Circuit Court reversed and a new trial granted. *Kaminer* v. *Hope*, 9 *S. C.* 253.

This cause is now to be considered in the light of that judgment; and it having been therein held " that the plaintiff could not recover in this action the amount due the estate of Simon A. Leaphart by the late Martin T. Leaphart, as administrator, in the absence of an administrator *de bonis non* of Simon's estate," the pleadings were amended by adding William J. Assman, who had been in the meantime appointed administrator *de bonis non* of Simon A. Leaphart, as one of the plaintiffs. John C. Hope having also in the meantime died, the pleadings were further amended by adding as a party defendant, James C. Hope, as the administrator of John C. Hope. As thus amended, the cause is again presented for trial.

The plaintiffs claim that the defendant's intestate is liable for the full amount of the judgment rendered against his principal, Levi Gunter, by the Court of Equity. The defendant sets up three defenses : First. He denies the execution of the bond set forth in the complaint. Second. He denies the liability of his intestate upon the administration bond for a *devastavit* committed by Martin of the estate of Simon, and avers that the sureties upon the administration bond of Martin are alone answerable for such *devastavit*. Third. He denies that the sum of $4,047.68 and $8,095.37 were found to be due respectively in favor of Mary Leaphart and Polly Leaphart against the said Levi Gunter as administrator of Martin T. Leaphart, and chargeable upon the administration bond of Levi Gunter as a *devastavit* of the estate of the said Martin T. Leaphart.

The first defense has been settled by the verdict of the jury in favor of the plaintiffs. The remaining defenses involve the questions reserved for the court, which I shall now proceed to consider :

It is urged by the defendants that as to the *devastavit* of Martin T. Leaphart, these plaintiffs should proceed against the sureties upon his official bond. True, they may elect so to do ; but why, when it appears that he (Martin) left an estate ample for the payment of debts, which passed into the hands of his administrator, Gunter? The demands of these plaintiffs against Gunter is for the payment of a debt due by Martin to the estate of his intestate, Simon. I say a debt due the estate of Simon upon the death of Martin—for any sum which he was in arrears to Simon's estate was a debt due by the former to the latter. *Davis* v. *Wright,* 2 *Hill* 567 ; *Gill* v. *Douglass,* 2 *Bail.* 387.

Gunter admits assets, but in the proceedings before the Court of Equity fails to account for them. I am, therefore, unable to see upon what principle his surety can avoid responding to his default, according to the condition of his bond. The liability of the surety is to make good the injury which may be sustained in consequence of the misconduct of the principal. *Ordinary* v. *Shelton,* 3 *McC.* 417 ; *Davis* v. *Wright,* 2 *Hill* 567 ; *Wiley* v. *Johnsey,* 6 *Rich.* 358 ; *Ordinary* v. *Mortimer,* 4 *Rich.* 275.

These authorities furnish an ample exposition of both the responsibility and the liability of the surety. Martin having converted the entire estate of Simon, the only right which remained to the administrator *de bonis non* was to demand of the personal representative of Martin an account, and ask judgment for such balance as may be ascertained to be due by the latter to the estate of his intestate. *Villard* v. *Robert,* 1 *Strobh. Eq.* 402.

Such accounting being had and balance ascertained against the administrator, it is the well recognized practice for the administrator *de bonis non,* upon the decree of the ordinary or Court of Equity, to sue the administrator of the former administrator upon his bond in an action at law, and, when necessary, to join in the action the sureties upon his bond.

Governed by the rule laid down in *Ordinary* v. *Carlisle,* 1

*McM.* 100, the defendant's intestate can be discharged only by showing that his principal, Levi Gunter, received no assets which were liable for the payment of the *devastavit* committed of the estate of Simon A. Leaphart, or by otherwise pointing out in what particular it would be improper to charge him in this action with the entire amount of the judgment against Gunter in the former suit. *Kaminer* v. *Hope,* 9 *S. C.* 257. This he has not done, though full opportunity was allowed. This, in fact, he could not do, since it appears from the returns of Gunter before the ordinary in January, 1861, that there remained in his hands, after the payment of all other debts of Martin T. Leaphart, an amount largely in excess of that due the estate of the said Simon A. This Gunter should have applied in payment of the claim of Martin's intestate, or, pending the litigation, he should have paid the fund into court or otherwise invoked the aid of the court, and sought the appointment of some one to whom he would be authorized to pay the same. He, however, saw fit to join in the controversy raised by the Leaphart family, who were all in antagonism to plaintiffs, and to assume the risk, pending the litigation, of holding and controlling the fund. That it has been lost is the result of his own voluntary act, and the obligation to secure parties in interest against just such risk the sureties assumed by the very condition of his bond.

But suppose, as is urged by the defendant, that the plaintiffs be required in the first instance to proceed against the sureties of Martin. Would they not, having been required to respond to Martin's default, have the right to proceed against Martin's estate, in the hands of Gunter, his administrator, and to hold him and his sureties for the default of Martin by them paid? This being true, why insist upon such diversity of action? The sureties of Martin would be subrogated to any right of the creditor of Martin whose claim they had been required to pay. *Hampton* v. *Levy,* 1 *McCord Ch.* 116; *Lowndes* v. *Chisolm,* 2 *Id.* 455; *Perkins* v. *Kershaw,* 1 *Hill Ch.* 344; *Rhame* v. *Lewis,* 13 *Rich. Eq.* 330, 332.

It is further urged by the defendant that he can, under no circumstances, be held for a greater sum than that found by the

referee in favor of the plaintiff Polly, against Levi Gunter, as administratrix of Martin T.; and he denies that the sums of $4,047.68 and $8,095.37 were found to be due respectively in favor of Mary Leaphart and Polly Leaphart against the said Levi Gunter, as administrator of Martin T. Leaphart, and chargeable upon the administration bond of the said Levi Gunter as a *devastavit* of the estate of said Martin T.

This defense is bottomed upon the judgment of the referee, which is as follows: "I therefore find for the plaintiff Mary, the sum of $4,047.68, and for the plaintiff Polly, the sum of $8,095.37, against the defendant, Levi Gunter, on account of the estate of Simon A. Leaphart; and for the plaintiff Polly, the sum of $2,048.60, against the defendant, Levi Gunter, as administrator of the estate of Martin T. Leaphart." The argument of the defendant is that in respect to these two amounts the judgment is against Gunter personally—not against him as administrator of Martin, and, therefore, his surety cannot be held liable.

It must be observed that the manner in which the referee has stated the account was a necessary consequence of the separate interests of the plaintiffs, Mary and Polly, and should not be construed as indicating a liability of Gunter in different capacities. The bill was wide in its scope, seeking in the outset an account alone of the estate of Simon A. in the hands of Martin T., his administrator. Upon the death of Martin T., pending the suit, the bill had to be revived against Gunter, his administrator, and thenceforward involving the additional interest of Polly as one of the distributees of Martin.

The referee adopted a convenient and proper mode of expressing the separate interest of each of the plaintiffs; but I cannot see that it operates to charge Gunter in any other capacity than as administrator of Martin. The proceeding throughout, so far as it operated against him, was in his representative capacity, and a judgment could only be rendered against him as such, except, however, that as for any *devastavit* adjudged against him satisfaction may be ordered out of his individual estate. The amounts adjudged, as appears by the referee's report, in favor of Mary and Polly, respectively, were due by Martin to the estate of

Simon, his intestate, and assets sufficient for the payment of same having come into the hands of Gunter, he and his sureties are liable therefor.

But, further, in support of the view I feel constrained to take of the defenses now under consideration, I regard the judgment of the Supreme Court heretofore rendered in this case (9 *S. C.* 253) conclusive of the proposition. The defenses herein set up were all before the court in the former trial and before the Supreme Court upon the appeal. After deciding that the refusal on the part of the Circuit judge to charge upon certain propositions of law as requested by the defendant was sufficient ground for a new trial, Kershaw, acting Associate Justice, speaking for the court, says : "Other questions are made by the appeal which it will be proper to settle in order that the new trial may be conducted in the light of a decision of the points of law involved."

The very questions now under discussion were then considered, and in holding that the judgment against Gunter could only be *prima facie* evidence against his surety, the court say : "The appellant has, therefore, a right to look into the decree and point out in what particulars it would be improper to charge him in this action with the entire amount of judgment against Gunter in the former suit. Of that amount the sum of $12,143.05 was for a liability of Gunter to the estate of Simon A. Leaphart. This arose from the sale and conversion of assets of the estate of Simon, which were in the hands of Martin as administrator, and by him assigned to Gunter, together with the bulk of his own estate, upon a trust to pay certain debts of the assignor from the proceeds. The decree against Gunter was for the residue of the fund left after performing the trust. This residuum, it is here claimed, was an asset in the hands of Gunter, as administrator of Martin, to be accounted for by him in that capacity. He himself so treated it in his accounts. The plaintiffs, also, have so treated the funds, and thereby ratified, so far as they are concerned, the conversion by Martin of Simon's assets. The fund derived from such conversion is, therefore, for the purposes of this decision, to be treated as vested in Martin's estate and to be accounted for by his administrator."

To whom, then, assuming this view of the argument as most favorable to the plaintiffs, is he, Gunter, to account for the fund? Evidently to the creditors of his intestate in the first instance, and afterwards to his distributees. Of the amount decreed against Gunter, $12,143.05 was due the estate of Simon A. Leaphart, for *devastavit* of Martin as administrator. Can this fund be recovered of the defendant in this case by the distributees of Simon A. Leaphart without an administration of the estate of Simon? Simply stated, the question is whether distributees can sue for and recover debts due their intestate's estate. Put in this form the affirmative would hardly be contended for. "It follows that the plaintiffs cannot recover in this action the amount due the estate of Simon A. Leaphart by the late Martin T. Leaphart, as administrator, in the absence of an administrator *de bonis non* of Simon's estate." 9 *S. C.* 257, 259.

Undoubtedly this amount was regarded by the court as a debt due by Martin to the estate of his intestate, for which Gunter, his administrator, was liable to account to the proper representative of Simon's estate. This party is now properly before the court, in the person of William J. Assman, as administrator *de bonis non* of Simon A. Leaphart, and I fail to see in the several grounds urged by the defendant anything to relieve his intestate from the liability of his principal.

The defendant further sets up the plea of "*plene administravit prœter*," and files with his answer certified copies of the inventory and appraisement, and also of his return before the Probate Court for the year ending December 31st, 1880, by which it appears that the defendant possessed assets of his intestate to be administered, amounting only to the sum of $961.06. No effort was made on the part of the plaintiffs to impeach these returns, nor to charge the defendant with more. This admission must, therefore, be taken as true, and the defendant can only be chargeable with the amount thus admitted, unless other assets of the intestate shall hereafter come into his hands to be administered as suggested in his answer.

There is no conflict between the plaintiffs in respect to their respective interest in the amounts sued for; but, in view of the judgment of the Supreme Court, I deem it proper to settle by

the judgment now to be delivered these respective claims for the protection of the administrator *de bonis non*. In the course of the argument, the defendant, while urging the proposition that he could not be held liable for the amounts adjudged by the referee against Gunter on account of Simon's estate, contended that the amounts heretofore collected from Gunter should be credited wholly upon the recovery in behalf of Polly, as one of the distributees of Martin. In the view I have taken of the liability of the defendant's intestate as the surety of Gunter, it is a matter of no consequence to him in what manner this application is made; and while to the plaintiffs it is also a matter of minor importance, I adopt the ratable application of such collections as the most proper.

It is therefore adjudged that the plaintiff William J. Assman, as administrator *de bonis non* of Simon A. Leaphart, recover against the defendant, as administrator of John C. Hope, deceased, the sum of $13,277.56, with interest from October 5th, 1874; and the plaintiff Polly Leaphart recover against the said defendant, as administrator as aforesaid, the sum of $2,212.92, with interest from October 5th, 1874; said debts, interests and costs to be levied of the goods and chattels which were of the said John C. Hope at the time of his death, in the hands of the said James C. Hope as administrator as aforesaid to be administered, and which may hereafter come into the hands of the said administrator to be administered, and of the lands, tenements and hereditaments which were of the said John C. Hope at the time of his death.

From this decree the defendant appealed upon the following exceptions:

1. Because it is respectfully submitted that the learned judge in his able opinion erred in the said judgment in this: That he has entirely overlooked the important point, earnestly pressed upon the court, that by the proceedings in equity (to which John C. Hope was not a party) referred to Francis W. Fickling as referee, and introduced as evidence in this case to show the amount of the liability of Levi Gunter as principal, and thereby to fix the liability of John C. Hope as surety, it appeared that

the accounting was had at the suit of the administratrix *pendente lite* of Simon A. Leaphart, and not at the suit of an administrator *de bonis non*.

2. Because, this being true, until there was an accounting by the principal at the suit of an administrator *de bonis non*, there was no breach of the condition of the administration bond legally ascertained, and no verdict could be legally rendered and no judgment could be legally predicated on such verdict.

3. Because, this being a correct conclusion of law, the Circuit judge erred in ordering judgment in any amount whatever, under any finding as to the penalty of the bond, before the breach of the condition had been legally ascertained in the suit against the principal, and, *a fortiori*, in a suit against the surety.

*Mr. J. D. Pope*, for appellant, cited 1 *Strobh. Eq.* 402, 414; 2 *Bail.* 373, 387; 1 *Rich. Eq.* 123; *Rice* 350; 16 *S. C.* 432.

*Mr. W. A. Clark*, contra.

March 2d, 1883.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The facts of this case are so fully and clearly stated in the Circuit decree, that it is not necessary for us to do more than to make such a brief statement as will be necessary to indicate the single point raised by this appeal, especially as the case, in different forms, has been before this court on two former occasions when it was reported—first, under the title of *Leaphart* v. *Leaphart*, 1 *S. C.* 199, and, next, under the title of *Kaminer* v. *Hope*, 9 *S. C.* 253, where a full history of the litigation between these parties may be found.

The present action was brought against John C. Hope, as surety upon the bond of Levi Gunter, administrator of Martin T. Leaphart, and, upon his death, continued against the present defendant as his administrator, to recover the amount found due by Gunter as such administrator, as well to the estate of Simon A. Leaphart, of whom his intestate, Martin T., was administrator, as to the plaintiff, Polly Leaphart, as one of the distributees of said Martin T.   The proceeding under which these amounts were found due by Gunter, as administrator of Martin T. Leap-

hart, was a bill in equity originally filed by Mary Leaphart and Polly Leaphart, claiming to be distributees of Simon A. Leaphart, against Martin T. Leaphart as his administrator. Upon the death of Martin T., Levi Gunter was appointed administrator of his estate, and a contest arising as to who was entitled to administration upon so much of the estate of Simon A. as was left unadministered by Martin T., letters of administration *pendente lite* were granted to Mary ·Leaphart. A bill of revivor was then filed, making Gunter, as administrator of Martin T., and the heirs-at-law of Martin, parties, and under this bill the account was taken which forms the basis of the present action.

The appellant contends that inasmuch as the account was taken in a proceeding in which the estate of Simon A. Leaphart was represented, not by an administrator *de bonis non*, but only by an administrator *pendente lite*, it was without authority and not binding, and, therefore, constituted no sufficient foundation for the present action, because the only person who could demand from the administrator of Martin an account of his actings and doings, as administrator of Simon, was an administrator *de bonis non* of the latter, and that such accounting could not be had at the instance of Mary Leaphart as administratrix *pendente lite*.

The respondent, however, makes a preliminary objection to the hearing of this appeal, which must first be disposed of. The objection is, that it nowhere appears in the "Case," as prepared for argument in this court, that the question now presented by this appeal was ever made or considered in the Circuit Court, and that according to the well-settled rule, we are precluded from considering such question. That such is the rule has been so often declared by this court that it is scarcely necessary to refer to the numerous cases in which it has been announced. It is only necessary, therefore, to ascertain whether it is true as matter of fact that the "Case" fails to show that such a question was made in the court below. We have examined the "Case" carefully and are unable to discover any evidence that such a question was ever presented to the Circuit judge for decision. His decree presents the facts of the case clearly, and discusses the legal questions presented fully and satisfactorily, and there is no intimation whatever that any such question as

that now presented was ever brought to his attention. The grounds of appeal do not assail the correctness of any of the legal propositions laid down in the decree, but simply complain that the Circuit judge "overlooked" the point now relied upon. It is true that in the first ground of appeal it is distinctly asserted that the point was earnestly pressed upon the court below; but, as we have frequently had occasion to say, we are not at liberty to accept any statement of fact incorporated into the exceptions or grounds of appeal, unless such statement appears also in the "Case," and have found it necessary by a recent amendment of the rules of this court, to distinctly and formally declare the proper practice in this respect.

But this court is always reluctant to dispose of a case upon merely technical or formal grounds, and as the evidence incorporated in the "Case" shows clearly that the accounting relied upon as the basis of the present action was taken in a proceeding to which the administrator *de bonis non* of Simon A. Leaphart was not a party, but that his estate was represented in that proceeding by Mary Leaphart, as administratrix *pendente lite,* and as the question has been fully argued at the bar, we are disposed to relax the rule in this instance, and consider the question made by the appeal, as if there were no technical objection in our way.

It does not appear, nor is it suggested, that when the accounting relied upon was taken, Gunter, who was a party to that proceeding, interposed any objection on the ground of a want of proper parties, or in any way questioned the right of an administrator *pendente lite* of the estate of Simon A. Leaphart, to demand an account from him of the administration by his intestate, Martin T. Leaphart, of the assets of the estate of Simon A., and therefore Gunter would scarcely be in a position now to question the result or effect of such accounting; nor is it clear that Hope, as his surety, could question it on that ground, even though not himself a party to the proceeding in which such accounting was had, especially when the person who is admitted to have had the right to demand such accounting, the administrator *de bonis non* of Simon A., is now before the court

recognizing and adopting, and thereby being bound by, such accounting.

But waiving this, let us consider the main question presented, whether the administratrix *pendente lite* of the estate of Simon A. could maintain an action against Gunter as administrator of Martin T., to recover the amount due by him as administrator of Simon A., or could this be done only by an administrator *de bonis non* of the estate of Simon A.? It is quite true that Gunter, by virtue of his administration on the estate of Martin, was not the administrator of Simon, and that whatever balance which may have been due to the estate of Simon by the estate of Martin, was nothing more than a debt due by the one estate to the other. Hence, as was held at the former hearing of this case, (*Kaminer* v. *Hope*, 9 *S. C.* 253,) such a debt could not be recovered by the distributees of Simon, but must be sued for by a proper representative of his estate, and none such being then before the court, Mary Leaphart, who had been administratrix *pendente lite*, having died before the commencement of this action, it was necessary that the proceedings should be amended by making the administrator *de bonis non* of the estate of Simon, a party; which was subsequently done.

But the question still recurs, whether the administrator *pendente lite* was not such a proper representative of the estate of Simon, as that she could maintain an action to recover the debt due to her intestate's estate by the estate of Martin, or could the action be brought only by an administrator *de bonis non?* It seems to be well settled, both upon principle and authority, that while the authority and power of an administrator *pendente lite* is much more limited in its nature than that of a general administrator, yet he may bring actions to recover debts due his intestate's estate. The leading case upon the subject, which has been repeatedly recognized since, is the case of *Walker* v. *Woollaston,* 2 *P. Wms.* 576, in which the doctrine above stated was distinctly laid down, and in the argument of counsel in that case, which seems to have been adopted by the court, but which is too long to be transcribed here, it is conclusively shown to be fully supported both by reason and authority, and absolutely necessary to effect the objects of such a limited

administration. See also the cases of *Knight* v. *Duplessis*, 1 *Ves. Sr.* 325; *Ball* v. *Oliver*, 2 *Ves. & B.* 97; *Gallivan* v. *Evans*, 1 *Ball & B.* 192; *Wills* v. *Rich*, 2 *Atk.* 285.

In our own State, we do not think that the question has ever been distinctly decided, the authorities relied upon by the appellant not being in our judgment directly in point. They are all cases in which the question was, whether the action could be maintained by creditors or distributees, and we are not aware of any case in which the distinct question made by this appeal has been raised. It is true that in some of the cases strong language is used implying that such an action as this could only be maintained by an administrator *de bonis non*, but those expressions must be taken with reference to the facts of the cases in which they occur, and signify that, as between creditors or distributees and an administrator *de bonis non*, the action can only be maintained by the latter.

In *Gill* v. *Douglass*, 2 *Bailey* 387, (which, however, has been qualified by the subsequent case of *Ford* v. *Dangerfield*, 8 *Rich. Eq.* 110,) the action was by the escheator of Lancaster district to recover a balance due by the estate of the defendant's intestate on his administration of the estate of Dr. Clancy, who had died intestate, leaving no one entitled to claim as next of kin. The court held, that the escheator stood as a distributee and could not maintain the action, which should be brought by a legal representative of the first intestate; but whether such legal representative must necessarily be an administrator *de bonis non*, or whether an administrator *pendente lite* would not answer as such representative, is not even hinted at in the case.

In *Easterling* v. *Thompson*, *Rice* 346, an effort was made by creditors to reach the assets of the first intestate through an administrator of the deceased administrator of such intestate, and the court held that they could only proceed against an administrator *de bonis non*, whose duty it would be to require an account from the administrator of the first administrator, and no question was raised as to what would be the rights or duties of an administrator *pendente lite*.

In *Stevenson* v. *Wilcox*, 16 *S. C.* 432, the action was brought by the creditors of an intestate against the sureties of an admin-

istrator *pendente lite*, and the court held that such an administrator was accountable only to the general administrator, and not to the creditors or distributees, as he had no authority to pay debts or distribute the assets; but the question, whether an administrator *pendente lite* could maintain an action to recover a debt due his intestate's estate, was not, and could not have been, raised in the case.

In *Villard* v. *Robert*, 1 *Strobh. Eq.* 393, the question was whether a settlement, made by the representatives of an executor, on an accounting had with an administrator *de bonis non cum testamento annexo*, for assets of the testator, converted into money by the executor in his life-time, was a bar to an action by the legatees against the representatives of such executor; and the court held that it was, because the administrator *de bonis non* had a right to demand such accounting from the executor, practically overruling what was said in *Smith* v. *Carrere*, 1 *Rich. Eq.* 123, on this point; but nothing was said as to the right of an administrator *pendente lite* to bring an action for such accounting.

From this review of the authorities, it seems to us that the English cases establish the proposition, that an administrator *pendente lite* may maintain an action to recover a debt due the estate of his intestate, and that there is no controlling authority in this State to the contrary; and inasmuch as to deny this right to such an administrator would, in many cases, practically defeat the object of appointing a limited administrator, by delaying the collection of the assets of an intestate, and thereby, perhaps, incurring the hazard of their entire loss, pending a controversy in the Court of Probate, we think that the doctrine established by the English cases has not only the support of authority, but is well founded in reason. We must, therefore, conclude that, outside of any mere technical objection, this appeal cannot be sustained.

The judgment of this court is that the judgment of the Circuit Court be affirmed.